IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE BISHOP LILLEGARD, Individually and on behalf of a class, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| BLATT, HASENMILLER, LEIBSKER & MOORE, LLC and UNIFUND CCR, LLC, | ) ) ) ) ) |
| Defendants. | ) |

Case No. 16 C 8075

Judge John Z. Lee

## MEMORANDUM OPINION AND ORDER

Plaintiff Jane Bishop Lillegard ("Plaintiff") brought this action against Defendants Blatt, Hasenmiller, Leibsker & Moore, LLC ("Blatt") and Unifund CCR, LLC ("Unifund") (together, "Defendants") alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* After amending their affirmative defenses to include their position that Plaintiff's claims are subject to arbitration, Defendants have moved to compel arbitration. For the reasons that follow, Defendants' motion [52] is denied without prejudice.

## Factual and Procedural Background

In 2006, Plaintiff opened a credit card account with Citibank, N.A. ("Citibank"). *See* Compl. ¶ 8, ECF No. 1; Defs.' Mem. Supp. Mot. Compel Arb. 2, ECF No. 53. Due to her financial circumstances, she could not fulfill her obligations under the account, and it went into default. Compl. ¶ 9. According to Defendants, Citibank thereafter sold Plaintiff's debt to Pilot Receivables Management, LLC ("Pilot"), who in turn sold Plaintiff's debt to Unifund. Defs.' Mem. at 2; *see* Compl. ¶ 10. Plaintiff alleges that Unifund, along with Blatt, which Unifund

1

retained to collect the debt, thereafter sent her correspondence for the purpose of collecting the debt and contacted her directly about the debt, despite knowing she was represented by an attorney. Compl. ¶¶ 13–16, 22, 26–30. Plaintiff maintains that these actions violated the FDCPA. *Id.* ¶¶ 33–52.

Plaintiff filed this suit on August 15, 2016. Unifund answered on September 28, 2016, and Blatt on October 5, 2016. Neither listed arbitration as an affirmative defense. Unifund's Answer, ECF No. 14; Blatt's Answer, ECF No. 18. On January 11, 2017, the Court granted the parties' agreed motion to extend the deadline for amended pleadings, setting February 9, 2017, as the new deadline. Order of Jan. 11, 2017, ECF No. 36. Defendants then filed motions to amend their affirmative defenses on February 9, each stating that Plaintiff's claims are subject to arbitration pursuant to an agreement with Citibank. Blatt's Mot. File Am. Affirmative Defenses, Ex. A, ECF No. 45-1; Unifund's Mot. File Am. Affirmative Defenses, Ex. A, ECF No. 47-1. Defendants claim that Plaintiff's credit card account with Citibank was subject to terms and conditions issued by Citibank, one provision of which permitted Citibank to elect mandatory arbitration for claims related to the account. Defs.' Mem. at 1–2. Defendants claim that "[t]he arbitration provision survives the transfer, sale, or assignment of the Account," such that they can invoke it in this case. *Id.* at 3–4.

## **Legal Standard**

The Federal Arbitration Act mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Courts are responsible for deciding whether an agreement to arbitrate exists

before ordering arbitration. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741–42 (7th Cir. 2010). Once a court is satisfied that an agreement to arbitrate exists, the FAA instructs the court to stay proceedings on issues subject to arbitration and provides a mechanism for parties to request that the court compel arbitration pursuant to the agreement. 9 U.S.C. §§ 3–4; *see also Tinder*, 305 F.3d at 733. A party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact as to the existence of the purported arbitration agreement. *Tinder*, 305 F.3d at 735. The opponent's evidentiary burden is akin to that of a party opposing summary judgment under Federal Rule of Civil Procedure 56. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* The Court must believe the evidence of the party opposing arbitration and draw all justifiable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Tinder*, 305 F.3d at 735.

## Analysis

Plaintiff argues that this Court should deny Defendants' motion to compel arbitration for two reasons. First, she contends that Defendants have waived their ability to seek arbitration by their conduct in this litigation. Second, she raises various issues as to the existence of the arbitration agreement that Defendants have posited. The Court will address each of these arguments in turn.

**I.    Waiver**

Plaintiff first argues that Defendants have waived their ability to seek arbitration by their conduct in this litigation. A number of obstacles, however, stand in the way of this argument.

3

First, the Supreme Court—albeit in general terms—has repeatedly stated that waiver is a defense to arbitration to be decided (at least presumptively) by an arbitrator, and not by a court. *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (2014) (observing that "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration," and listing waiver as one such "procedural matter"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (same); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). If such a presumption applies, there is no reason to think it should be rebutted here. This is particularly so in light of the fact that the arbitration provision in the Citibank terms and conditions that Defendants have produced subjects "[c]laims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision" to arbitration. Defs.' Mem., Ex. 1-D, at 57, ECF No. 57-1.

Granted, some courts have construed the Supreme Court's statements narrowly, interpreting them to permit courts to decide the issue of whether litigation conduct waives the right to seek arbitration. *E.g.*, *HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2016 WL 612861, at *4–5 (N.D. Ill. Feb. 16, 2016). And, while "no Seventh Circuit case has explicitly decided who should decide this type of waiver question, in several instances the Seventh Circuit has reviewed a district-court decision deciding the waiver issue and has not noted any problem with the district court being the decision-maker." *Id.* at *5 (collecting Seventh Circuit cases reviewing district courts' findings of waiver by litigation conduct).

But, even if this Court could decide that Defendants waived their right to arbitration by their conduct in this litigation, it would find they have not. The Seventh Circuit "recognize[s] a strong federal policy favoring arbitration and that waiver of arbitration is not lightly to be inferred." *Midwest Window Sys., Inc. v. Amcor Indus., Inc.*, 630 F.2d 535, 536 (7th Cir. 1980). To conclude that Defendants have waived their right to arbitration by their conduct in this litigation, the Court "must determine that, considering the totality of the circumstances, [Defendants] acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). "While several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision." *Id.* (citing *Cabinetree of Wis. v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995)). Other factors to consider include "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 589–91 (7th Cir. 1992)). Prejudice to the non-waiving party is not required, but nevertheless relevant. *Id.* "[W]hen a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate." *Id.* at 995.

Here, Plaintiff contends that Defendants have waived the right to seek arbitration by participating in this litigation and not filing their motion to compel arbitration for over six months. Pl.'s Resp. 15, ECF No. 63. Specifically, Plaintiff argues that (1) Defendants had notice of the purported arbitration agreement before the suit started and could have asserted it much earlier; (2) Defendants "served and obtained substantial discovery," including serving a notice to depose Plaintiff, and therefore "acted inconsistently with the arbitration right"; and (3)

Defendants sought and agreed to participate in a settlement conference, again evincing a desire to proceed in this forum, and not before an arbitrator. *Id.*

In evaluating Defendants' conduct, the Court finds *Cooper v. Asset Acceptance, LLC*, 532 F. App'x 639 (7th Cir. 2013), instructive. In *Cooper*, the plaintiff sued a debt collector in Illinois state court. *Id.* at 640. The debt collector removed the case to federal court in October 2011, filed a motion to dismiss the complaint shortly thereafter, and while that motion was pending, served various written discovery requests on the plaintiff over the course of several months. *Id.* When discovery disputes arose, the debt collector moved to stay discovery. *Id.* The debt collector also offered to settle the plaintiff's claims. *Id.* After the district court denied the debt collector's motion to dismiss and its motion to stay discovery, the debt collector moved to compel arbitration. *Id.* At this point, between six and seven months had passed since the debt collector removed the case to federal court. *Id.* The district court granted the motion. *Id.* The Seventh Circuit affirmed, holding that the debt collector did not waive its right to seek arbitration by filing its motion to dismiss, the debt collector's discovery conduct was not so extensive as to constitute waiver, the debt collector's motion to stay discovery suggested it did not want to proceed before the court, and the debt collector's delay in seeking arbitration was modest in light of the circumstances. *Id.* at 641–42.

Defendants' conduct in this case is not meaningfully different from the debt collector in *Cooper*, and if anything, the differences illustrate an even weaker case for waiver. The length of Defendants' delay in moving to compel arbitration is almost equivalent (if anything, a bit shorter) to that of the debt collector in *Cooper*. Additionally, as in *Cooper*, this case has not progressed beyond written discovery, and Defendants' participation in that discovery has not

been so extensive so as to constitute waiver.[1] Defendants have sought settlement, as did the collector in *Cooper*. Moreover, unlike in *Cooper*, Defendants have not sought to dismiss this case, nor did they remove the case to federal court, weakening the case for waiver. While neither circumstance would mandate a finding of waiver, *Cooper*, 532 F. App'x at 641, the absence of these actions militates against waiver. To that end, Plaintiff is incorrect in her assertion that Defendants "voluntarily chose to litigate" before this Court, such that a presumption of waiver arises. Resp. at 16. On the contrary, Plaintiff elected to sue them here, and Defendants have not filed any dispositive motions. Finally, while Defendants did not raise arbitration in their initial affirmative defenses, they produced the purported arbitration agreement in discovery and amended their affirmative defenses within the time provided by the Court to do so. 2/9/17 Hr'g Tr. 5:24–6:5, ECF No. 68.

For these reasons, Defendants have not waived their right to seek arbitration of Plaintiff's claims.

## II. Agreement to Arbitrate

Nevertheless, while the Court is unpersuaded that Defendants have waived their ability to seek arbitration, the Court cannot conclude at this stage that the parties formed an agreement to

---

[1] In regard to discovery, the Seventh Circuit has cautioned that discovery participation is not tantamount to committing irrevocably to the judicial forum, and prejudice to the non-waiving party, even if not required, should be considered. *Cabinetree*, 50 F.3d at 391 ("In this case, despite the one-sided character of the compliance to date with the demands for discovery, there would have been no demonstrable prejudice to [the non-waiving party] from ordering arbitration in July 1994, even though that was nine months after the filing of the lawsuit and eight months after the removal of the suit to federal district court."); *see also Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) ("[E]ven strong-arm tactics like the withholding of important [ ] records while demanding payment are not automatically enough to constitute an implied waiver of [an] agreement's arbitration provision."); *cf. St. Mary's*, 969 F.2d at 587, 591 (holding that, in light of the totality of the circumstances, a party waived the right to seek arbitration where the parties had engaged in over four months of discovery, including depositions of principal witnesses, and the party sought arbitration only months before trial). The cases cited by Plaintiff, Resp. at 16–17, do not command otherwise.

arbitrate. Plaintiff has identified a number of genuine issues that preclude such a finding. *Tinder*, 305 F.3d at 735.

First, Plaintiff highlights language in the Citibank terms and conditions produced by Defendants, which state: "The Fact Sheet shows whether your account is subject to arbitration. If it is, the following 'Arbitration' provision is a part of this Agreement." Defs.' Mem., Ex. 1-D, at 57. Despite providing a copy of the terms and conditions and the arbitration provision, Defendants have not provided a copy of the "Fact Sheet." Without viewing the Fact Sheet, the Court cannot determine if Plaintiff's account was subject to arbitration in the first place.

Additionally, Plaintiff notes that the copy of the Citibank terms and conditions that Defendants have provided is dated as if they were issued in 2008. *Id.*, Ex. 1-D, at 55. As Defendants acknowledge, however, Plaintiff opened her account with Citibank in 2006. *Id.* at 2. And in her sworn declaration, Plaintiff states that she has no recollection of ever receiving a copy of the terms and conditions. Pl.'s Resp., Ex. I ¶¶ 3–4, ECF No. 63-1. The record does not foreclose the possibility that Plaintiff accepted an arbitration agreement by virtue of opening an account with Citibank, and her mere failure to recall receiving such an agreement does not create a triable issue of fact as to her accepting it. *Tinder*, 305 F.3d at 736. But because the discrepancy in dates suggests the terms and conditions that Defendants submitted are not in fact those that controlled Plaintiff's relationship with Citibank, Plaintiff has raised an issue as to the formation of the parties' arbitration agreement that the Court cannot resolve at this stage.

Put more broadly, Defendants have not properly authenticated the Citibank terms and conditions they submitted as those applying to Plaintiff. *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015) ("District courts routinely consider agreements containing arbitration provisions . . . but only if the proponent of arbitration properly

authenticates the document containing an arbitration provision through an affidavit or otherwise."). Here, the sole declaration offered by Defendants in support of their motion does not speak to Citibank's business and record-keeping practices, such that the Court can determine if the purported agreement is authentic and properly admissible. Defs.' Mem, Ex. 1 ("Andres Decl.") ¶ 18; *see Webb v. Midland Credit Mgmt., Inc.*, No. 11 C 5111, 2012 WL 2022013, at *4–5 (N.D. Ill. May 31, 2012) (explaining that a debt collector seeking to enforce a Citibank credit card arbitration agreement by relying on third-party business records needed to satisfy the foundational requirements for admission "through the testimony of a qualified witness with knowledge of the process by which the third party created the document, thereby demonstrating that the document is trustworthy," but failed to do so); *cf. Conway v. Done Rite Recovery Servs., Inc.*, No. 14-CV-5182, 2015 WL 1989665, at *3 (N.D. Ill. Apr. 30, 2015) (holding that the defendant had sufficiently authenticated a third-party arbitration agreement where the defendant's employee "ha[d] custody and access to the business records of [the third party] relating to [p]laintiff" and plaintiff's "name, car, address, and signature on the [agreement] appear[ed] identical to those included in [p]laintiff's pleadings").

Plaintiff also raises a number of issues as to whether the arbitration agreement, if validly formed with Citibank, can be invoked by Defendants. According to Defendants, Pilot purchased from Citibank, and Unifund from Pilot, a portfolio of accounts that included Plaintiff's account. Andres Decl. ¶ 6. But as Plaintiff points out, the arbitration agreement Defendants seek to invoke is signed by an officer of "Citibank (South Dakota) N.A.," as opposed to "Citibank, N.A." *Id.*, Ex. 1-D, at 55. Additionally, Defendants state that Plaintiff opened her credit card account with Citibank (South Dakota), N.A. *Id.* at 1. If these entities are the same, or if Citibank, N.A. had the same rights over Plaintiff's account as Citibank (South Dakota) N.A.,

9

Defendants do not explain how or why. *See Thomas v. Asset Acceptance, LLC*, No. 12 C 7360, 2013 WL 4538362, at *4 (N.D. Ill. Aug. 27, 2013) (denying a motion to compel arbitration where a debt collector seeking to enforce a Citibank credit card arbitration agreement had not properly established chain of title to the debt).

Moreover, the bill of sale by which Citibank purportedly conveyed Plaintiff's account to Pilot states, "[f]or value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 25, 2014, between [Pilot] and [Citibank,] [Citibank] does hereby transfer, sell, assign, convey, grant, bargain, set over, and deliver to [Pilot,] and to [Pilot's] successors and assigns, the Accounts described in Exhibit 1 and the final electronic file." *Id.*, Ex. 1-A. The Court is at a loss to know what, if anything, the Purchase and Sale Agreement says about Defendants' ability to invoke arbitration as to Plaintiff's account. While it may be that, as an assignee, Defendants are well within their rights to seek to compel arbitration, Reply at 6–7, the Court cannot conclude as much on the present record.[2] *See Thomas*, 2013 WL 4538362, at *4.

Defendants cite three district court cases for the proposition that "courts have routinely granted motions to compel arbitration in similar cases based upon the same terms and conditions of this Citibank Card Agreement." *Id.* (citing *Drozdowski v. Citibank, Inc.*, No. 2:15-CV-2786-STA-CGC, 2016 WL 4544543 (W.D. Tenn. Aug. 31, 2016); *Danley v. Encore Capital Grp., Inc.*, No. 15-CV-11535, 2016 WL 2851343 (E.D. Mich. May 16, 2016), *aff'd*, No. 16-1670, 2017 WL 710470 (6th Cir. Feb. 22, 2017); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013)). Two of these cases, however, involved circumstances in

---

[2] Defendants maintain that Plaintiff "admits in prior pleadings" that "defendants have a valid claim as to the debt." *Id.* at 7–8. But in the portion of Plaintiff's complaint that Defendants cite, she states that "Citibank *allegedly* sold the Alleged Debt to [Pilot], and Unifund *purportedly* purchased the Alleged Debt sometime thereafter." Compl. ¶ 10 (emphasis added). This is not an admission.

which Citibank itself sought to enforce the agreement, and the plaintiffs did not raise a genuine issue as to whether they had entered into an arbitration agreement with Citibank. *Drozdowski*, 2016 WL 4544543 at *3–4; *Coppock*, 2013 WL 1192632, at *1, *4. In the third, the defendants produced declarations from the custodian of Citibank, "who in turn attached the relevant exemplar contract documents, as well as copies of actual statement transaction details from plaintiffs' credit card accounts," and the plaintiffs again failed to raise a genuine issue as to whether they had entered into an arbitration agreement with Citibank. *Danley*, 2016 WL 2851343, at *4. By contrast, as explained above, Plaintiff has raised a number of such issues in this case.

For these reasons, genuine issues remain as to the existence of the parties' agreement to arbitrate, such that the Court cannot compel arbitration at this stage.

## Conclusion

For the foregoing reasons, Defendants' motion to compel arbitration [52] is denied without prejudice. The parties should be prepared to discuss what adjustments, if any, are needed to the current discovery schedule to accommodate whatever additional discovery is necessary in relation to the formation of the purported arbitration agreement, and Defendants' ability to enforce it.

**IT IS SO ORDERED.**  ENTERED: 5/11/17

_____
**JOHN Z. LEE**
**United States District Judge**